[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was brought to this court on June 9, 1992 and was tried to the court beginning November 2, 1995.
In the first count the plaintiff-lessor alleges that the defendant-lessee failed to comply with the terms of the parties' lease agreement regarding a Piper Navajo Chieftain aircraft identified as N600DB.
In the second count, the plaintiff alleges that the defendant failed to comply with the terms of a lease agreement regarding a Cessna 172M aircraft identified as N9093H.
In the third count the plaintiff claims that the defendant violated CUTPA by misrepresenting facts concerning the usage of the aircraft.
The lease which underlies the first count was executed by the officers of the parties on April 1, 1989. The term of the lease was for a period of one year from February 1, 1989 to January 31, 1990. Pursuant to the terms set forth in paragraph 4a the defendant was to pay the lessor at the rate of $275 per hour "for all use of the aircraft." The contract then states, "[H]ours of use shall be determined on the basis of the Hobbs meter installed in the Aircraft; if the Hobbs meter is inoperative at any time, hours of use shall be determined by multiplying elapsed tachometer time by a factor of 1.15." The Hobbs meter measures the distance an aircraft flies; the tachometer measures the length of time the aircraft engine runs. In addition, the Lessor agreed, in paragraph 5c, to pay for "the cost of all fuel and oil used in the aircraft." CT Page 1401-B
By December 1989 problems arose which caused the parties to modify the lease agreements as to both aircraft. With regard to N600DB the parties agreed the hourly lease rate would be reduced to $205 per hour and that the Lessee wold be "responsible for all fuel and oil used in the operation of the Aircraft." These changes came about because the plaintiff expected the Navajo Chieftain to consume less fuel.
Meanwhile, because the Hobbs meter was not functioning properly the defendant changed its method of reporting hourly usage by computing it from the pilots' logs rather than the Hobbs meter or the tachometer. As a result, the plaintiff believed it had not been paid in accordance with the contract. Despite a meeting in which the parties negotiated various adjustments, the plaintiff was dissatisfied and thereafter brought this action.
In paragraph 8a of the complaint the plaintiff alleges that the defendant did not pay for 16.8 hours of usage in December 1989.
A review of plaintiff's exhibits 1, 2 and 19 indicates that the defendant reported usage of 23.9 hours. The court has reviewed the Hobbs meter records and finds that the defendant used the aircraft for an additional 10.9 hours. It owes the plaintiff $1882.00 for those hours, based on compensation at the rate of $275 per hour until December 18, and $205 for the remainder of December. Excluded from this amount are the 2.7 hours noted as the "Silverman trip" for which the defendant paid the plaintiff $553.50 on January 25, 1990. Also excluded are hours of usage or payments made in connection with flights before December 1, 1989. The plaintiff is limited in its recovery to the allegations of the complaint.
In paragraph 8b of the complaint the plaintiff alleges that "[I]n January of 1990 a substantial number of hours were missing which the Plaintiff believes is between 60 to 70. . . ."
In January the defendant's leaseback report did not record the Hobbs "Out" and "In" times. This report differed from the report of the prior month, December 1989, wherein mathematical errors were ascertainable from the face of the leaseback report because the Hobbs meter readings were shown.
The defendant's aircraft logs indicate two Hobbs meter readings for each category, "Out" and "In," as the plane carried two Hobbs meters at one time. (Exhibit 1, pp. 27 and 32), On December CT Page 1401-C 28, 1989 the Hobbs meter was removed and the notation on the repair order indicated that the meter "runs faster than it should." (Exhibit 2, p. 5) The meter was tested for one hour but showed a reading of 1.2 hours after the test.
The court does not agree with the plaintiff's claim. In reaching its conclusion the court considered the fact that the meter was running faster; it reviewed the leaseback report and compared the time data on the pilots' trip logs for the month of January in order to determine which of the Hobbs meter reading was compatible. (Exhibit 1)
Furthermore, the court interprets the defendant's aircraft logs dated January 13, 1990 as reflecting one flight rather than two as the plaintiff claims. There is only one invoice number for that date, namely 12928. The reported Hobbs "Out" time was 1680.5 and the "In" time 1683.2. On January 15 the Hobbs readings for the new machine correspond to the crossed-out readings on the second line dated January 13 which follow upon the January 12 Hobbs "In" reading of 14.2 and which precede the Hobbs "Out" reading of 17.9 on January 15.
The court finds that the defendant underreported usage of 4.1 hours. Therefore, the defendant owes the plaintiff the sum of $840.50.
In paragraph 8c of the complaint the plaintiff alleges that "[D]uring April of 1990 the defendant started overcharging the Plaintiff for certain fuel and oil which the Lessee Defendant was suppose (sic) to pay pursuant to the letter agreement modifying the original lease which letter agreement was dated December 18, 1989."
The defendant claims that fuel use in the operation of the plane was not meant to include fuel used in maintenance. However, the court finds that the $70 reduction in the hourly rate was intended to pass the total fuel cost to the defendant. Accordingly, the defendant was responsible for fuel. In April 1990 the defendant did not bill the plaintiff for fuel. However, the plaintiff was billed for fuel and oil in several months of 1990 for which he paid the following sums:
 March 31, 1990 $ 50.40 May 31, 1990 102.00 July 31, 1990 107.06 CT Page 1401-D 93.81 51.00 August 31, 1990 102.00 September 30, 1990 102.00 30.00 November 30, 1990 102.00
Although these charges total $740.27, the plaintiff paid $764.27 to the defendant for this fuel in error. Accordingly, the defendant shall reimburse the plaintiff the amount paid.
In paragraph 8d the plaintiff alleges that "towards the beginning of the lease under the original hourly rate of $275.00 an hour and based on a review of fuel charges which at the beginning of the lease the plaintiff was paying for the number of hours to which the plaintiff was unreimbursed were at least 125." Paragraph 5e of the original agreement stated as follows, "[L]essor shall be responsible for. . . (c) [t]he cost of all fuel and oil used in the aircraft." The letter agreement of December 18, 1989 stated that ". . .the Lessee shall be responsible for all fuel and oil used in the operation of the Aircraft."
The court finds that the plaintiff's calculations as to fuel usage were speculative. John Stanton, the president of Stanton Aviation, based this claim on data in the aircraft's manual and the representation of Joseph Tringalli, the defendant's president, that the defendant could fly the plant on 37 gallons per hour. There was no provision in the contract that memorialized the defendant's representation. The plaintiff failed to produce the aircraft manual to provide evidence as to the estimated fuel usage of the airplane. Therefore, he failed to meet his burden of proof on this issue.
Furthermore, the parties testified as to other amounts charged and paid. The defendant claims that the plaintiff agreed that it owed the plaintiff $2000 based on payments it made in January 1991. The plaintiff contends the amount is greater. The court cannot make findings as to what adjustments were made since some were made in 1990 and some in 1991. The court has no basis to determine whether or not the adjustments applied to the time periods specified in the complaint.
In the second count the plaintiff alleged that with regard to the Cessna lease the defendant lessee failed to pay rent for July 1989; and the defendant lessee charged to the plaintiff's account "a number of items that were not done and never installed not to CT Page 1401-E mention certain over charges for oil." The plaintiff did not provide sufficient evidence regarding these allegations. Therefore, he did not sustain his burden of proof.
In the third count the plaintiff alleges that the defendant "misrepresented the true state of facts as regards the usage of all Aircraft covered in this complaint leased to the Defendant." He further alleges that such "misrepresentations are in fact in as (sic) cumulative manner if not separately unfair trade practices prohibited by the terms of the Connecticut Unfair Trade Practices Act 42-110a et seq."
General Statutes sec. 42-110b (hereinafter CUTPA) provides that "[N]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 110g provides that "[A]ny person who suffers any ascertainable loss of money . . . may bring an action . . . to recover actual damages. . . ."
The court finds that the plaintiff did not meet its burden of proof with regard to its claim under CUTPA. The court finds that the defendant, its president Joseph Tringalli and its staff were negligent and careless in keeping records. The defendant failed to follow the lease agreement which called for usage determination by either Hobbs meter or tachometer. As such it breached the contract. However, its practices were not so unscrupulous or immoral as to rise to the level of a CUTPA violation. Since there was insufficient evidence as to Tringalli's representation regarding fuel usage he could extract from the plane, and since the contract was silent as to this issue, the plaintiff could not show that it had relied on such a misrepresentation in making its decision. Furthermore, there was no evidence that the contract was unconscionable given the commercial background of the parties and needs of the particular business. See Hamm v. Taylor, 180 Conn. 491, 495-496 (1980).
The defendant alleged in its Special Defense that it notified the plaintiff of the malfunctioning of the Hobbs Meter. It further alleged that it informed the plaintiff that it would base its use of the aircraft on its pilots' logs. The court finds that there was no credible evidence that the plaintiff was so informed at the time the defendant started to make its adjustments. The defendant's record keeping was sloppy and failed to accurately disclose the hours the plane was flown. Therefore, the court finds that the defendant's aircraft logs are unreliable with regard to hours of CT Page 1401-F usage.
For the foregoing reasons, judgment shall enter for the plaintiff in the sum of $3486.77.
Leheny, J.